UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **SOCIETY OF THE ROMAN CATHOLIC CHURCH OF THE DI ET AL** | **CASE NO. 2:21-CV-03480** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **CATHOLIC MUTUAL RELIEF SOCIETY OF AMERICA ET AL** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM ORDER

Before the Court is "Catholic Mutual's Motion to Compel Arbitration" (Doc. 27) wherein The Catholic Mutual Relief Society of America ("Catholic Mutual") requests that the Court enter an order to compel arbitration and stay the instant proceeding until the matter is fully arbitrated.

## INTRODUCTION

On August 27, 2020, Hurricane Laura made landfall near Lake Charles, Louisiana allegedly damaging numerous properties belonging to the Plaintiffs, the Society of the Roman Catholic Church of the Diocese of Lake Charles, the Corporation of St. Margaret's Roman Catholic Church, the Congregation of St. Theodore Roman Catholic Church, and the Congregation of St. Joseph Roman Catholic Church of Vinton (collectively referred to as "Plaintiffs" or the "Diocese").[1]

---

[1] Complaint, Doc. 1.

During the relevant time period, Catholic Mutual issued a Certificate of Coverage (the "Certificate") to the Diocese. The properties which were covered under the Certificate included numerous churches, schools, administrative buildings, and associated structures and facilities located in Allen, Beauregard, Calcasieu, Cameron, and Jefferson Davis Parishes (referred to as the "insured properties").[2]

The Diocese filed the instant lawsuit against Catholic Mutual and Texas Claremont Property Company, Inc. ("Claremont").  The Diocese alleged in its Complaint that the Certificate covered its insured properties, personal property/contents, and business interruption and extra expenses, caused by the hurricanes, wind, and hail.[3]

The Diocese asserts that it reported the loss to Catholic Mutual, after which, Catholic Mutual inspected the insured properties, but failed to timely and adequately adjust its claims which delayed the Diocese from making meaningful repairs. The Diocese asserts bad faith damages pursuant to Louisiana Revised Statute 22:1892 and 22:1973.

The Diocese also complains that Catholic Mutual unilaterally and without consultation with the Diocese, contracted with Claremont, a mitigation company, to conduct storm-damage mitigation work.[4] The Diocese alleges that Claremont performed the mitigation work at the direction, control, and supervision of Catholic Mutual, however, Catholic Mutual provided grossly inadequate oversight of the contractor.[5]

---

[2] *Id.* ¶ 5.
[3] *Id.*
[4] *Id.* ¶¶ 22 and 23.
[5] *Id.* ¶. 24.

The Diocese alleges that Claremont created more destruction of its insured properties than what had been caused by Hurricane Laura.[6] The Diocese alleges that Claremont workers were improperly trained and/or qualified, stole computers and equipment, removed and destroyed items not damaged, and did not complete work, leaving certain buildings exposed creating more water intrusion.[7]

The Diocese asserts that it is entitled to both compensatory damage for the property damage created by Claremont and additional payments under its Certificate commensurate with the amount Catholic Mutual chose to pay for the negligent work its unilaterally chosen mitigation contractor performed.[8]

Additionally, the Diocese asserts that the premiums Catholic Mutual charged the Diocese were unreasonably and unlawfully in excess of the coverage provided. Thus, because of the excess premiums, the Diocese requests that the applicable policy limits under the policy be judicially increased.[9]

## **LAW AND ANALYSIS**

Catholic Mutual maintains that because the Certificate included an arbitration provision as to all disputes between the parties, the dispute mut be submitted to arbitration and the case stayed. The Diocese argues that (1) Catholic Mutual waived its right to arbitrate, (2) the Certificate is a policy of insurance subject to the Insurance Code, (3) this

---

[6] *Id.* ¶ 25.
[7] *Id.* ¶¶ 25-32.
[8] *Id.* ¶ 33.
[9] *Id.* ¶¶ 53-54.

Court is not bound by the Insurance Commissioner's Declaratory Order, (4) Louisiana Revised Statute 22:868 expressly prohibits arbitration provisions, (5) and the arbitration provision is unenforceable because it is unconscionable.

The Certificate provides the following Dispute Resolution clause:

> Any unresolved difference between a Certificate Holder or Protected Persons(s) and us, including but not limited to participation, termination or cancellation, coverages, defenses, or interpretations of Certificate language shall be subject to resolution only as herein provided.[10]

Catholic Mutual argues that the sole remedy for the dispute between it the Diocese is the arbitration procedure. The Diocese argues that because the Certificate is regulated by the Louisiana Insurance Code, specifically, Louisiana Revised Statute § 22:868, arbitration provisions are prohibited. The Diocese also argues that Catholic Mutual waived its right to arbitration.

Should the Court conclude that Catholic Mutual's Certificate is a policy of insurance regulated by the Insurance Code, Louisiana Revised Statute § 22:686 specifically prohibits arbitration agreements in insurance policies covering property within the state. See, e.g. *Next Level Hosp. LLC v. Indep. Specialty Ins. Co.*, 2023 WL 2771583 (W.D.La. Mar. 31, 2023); *Bufkin Enterprises LLC v. Indian harbor Ins. Co.*, 2023 WL 2393700 (W.D. Mar. 7, 2023); *Tra-Dor Inc. v. underwriters at Lloyds London,* 2022 WL 3148980 (W.D. La. July 25, 2022). However, should the Court determine that the Certificate is not a contract

---

[10] Defendants' exhibit A, ¶ 17, CM-LC 000-115.

of insurance, the arbitration provisions are enforceable, unless it is determined that Catholic Mutual waived its right to enforce the arbitration provision.

Catholic Mutual argues that § 22:868 does not apply because its coverage contract is not a contract of insurance and therefore not subject to the Insurance Department approval. Catholic Mutual relies on a Declaratory Order issued by the Louisiana Department of Insurance,[11] which it sought from the Commissioner.[12] The Commissioner's Declaratory Order states that Catholic Mutual "does not qualify as a risk-bearing entity under La. R.S. § 22:48" and that "[c]onsequently, it is not regulated under the Louisiana Insurance Code."[13]

Catholic Mutual asserts that the Commissioner relied on Catholic Mutual's characteristics as follows:

- Catholic Mutual is a non-profit organization designated by the IRS as tax-exempt under § 501(c)(3) and governed by a religious board of trustees who are ordained clergy;

- Catholic Mutual issued a Certificate of Coverage only to religious members (Certificate Holders), protecting them and their affiliated religious entities;

- Under the Certificate, Catholic Mutual assumes 100% of the risk for the claims of its members;

- Each Certificate states "THIS IS NOT A POLICY OF INSURANCE" but "EVIDENCES YOUR PARTICIPATION IN A SELF-PROTECTION PROGRAM OF THE ROMAN CATHOLIC CHURCH;

---

[11] Defendant's exhibit B.
[12] Defendant's Memorandum in Support, p. 6, Doc. 27-1; Defendant's exhibit C.
[13] Defendant's exhibit B, ¶ ¶ 3-4.

- Catholic Mutual has been designated as a tax exempt § 501(c)(3) religious organization because it operates exclusively for a religious purpose;

- The Louisiana Insurance Code regulates only insurers or entities that bear insurance-related risks. Catholic Mutual does not fall within these categories because it functions as a self-funded program for the Roman Catholic Church and does not issue insurance policies.

The Commissioner noted that the Catholic Relief Insurance Company, an insurance company domiciled in Vermont, issued policies to Catholic Mutual as its sole insured. However, Catholic Relief does not issue insurance policies to Catholic Mutual's members. The Commissioner concluded that since Catholic Mutual is a self-funded entity bearing 100% of the financial costs associated with its Certificate, it does not qualify as a risk-bearing entity under Louisiana Revised Statute 22:48 and is not regulated by the Louisiana Insurance Code.[14]

The Diocese maintains that the Certificate is a policy of insurance and that the Declaratory Order is not entitled to great weight because the Order expressly states that "[p]ursuant to Regulation 110 this order shall have the effect only upon Petitioner [Catholic Mutual] in the Petition for Declaratory Order, namely Catholic Mutual relief [sic] Society of America.[15] Additionally, the Insurance Commissioner's implementing regulations specifically states that a declaratory order's effect is only upon the person requesting it and the Commissioner. LAC 37:XIII, Chapter 157, § 15705. Specifically, the regulation provides as follows:

---

[14] Defendant's exhibit B, p. 3.
[15] Defendant's exhibit A.

## § 15705 Declaratory Orders, Generally

\*\*\*

B. A declaratory order shall have effect only upon the person requesting it and the commissioner and shall continue in effect unless a ... court case, or statute supersedes it....[16]

The Diocese argues that Catholic Mutual is a risk-bearing entity and insurer that provided first party property damage insurance to the Diocese. The Diocese relies on the definition of insurance: "Insurance is a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies." Louisiana Revised Statute § 22:46(13)(a). As noted by the Diocese, the Certificate issued by Catholic Mutual states that it will indemnify the Diocese against loss and damages to its property resulting from the determinable contingency of a hurricane.

The Diocese remarks that Catholic Mutual issued a "Declarations" page, which states that "Coverage is provided in accordance with the following schedule of coverages. No coverage is provided for any part of this certificate unless a limit of liability or the word "Included" is shown for such coverage section or part." The Declarations state the first "coverage" as Property, with a building and personal property "Limit of Coverage/Liability" of $309,039,000, subject to a deductible with a "Named Storm" "Limit of Coverage/Liability" of $30,000,000 per occurrence/annual aggregate. The Certificate contains liability coverage, crime coverage, marine forms coverage, directors and officers

---

[16] Plaintiff's exhibit C, LAC 37:XIII, Chapter 157, § 15705.

coverage, priests coverage, excess liability coverage, equipment breakdown coverage, long term professional liability coverage, and sexual misconduct coverage. The Diocese maintains that these statements and coverages are consistent with the traditional notion of insurance.

Other provisions and/or terms the Diocese relies upon are as follows:

AGREEMENT

We shall provide the protection described in this certificate in return for your payment of the charges and your compliance with the certificate provisions.[17]
PROPERTY COVERAGE CLAUSE – PERILS COVERED

We cover direct physical loss or damage to property described in Section I – Coverage A and B subject to the exclusions and limitations described in Section I – Property Coverage.[18]

Just like a contract of insurance, the Certificate is also subject to conditions and exclusions. The Diocese also relies on Catholic Mutuals Petition to the Insurance Commissioner wherein it acknowledged that it was a risk-bearing entity and expressly stated that it bears 100% of the risk for the claims of its members.[19]

The Diocese notes that "nonprofit beneficiary organizations and risk indemnification trusts" are included in the list of entity types that are classified as an insurer or risk bearing entity. Louisiana Revised Statute § 22:48(A)(13). Additionally, Louisiana Revised Statute § 22:48(B) also expressly states that the Department of Insurance is not

---

[17] Plaintiff's exhibit B.
[18] *Id.*
[19] Plaintiff's exhibit D.

precluded from regulating any other entity that meets the definition of an insurer or risk bearing entity as defined in this Title unless specifically excluded from regulation by the department. This is reaffirmed in the Declaratory Order, which expressly states that "[t]he Louisiana Insurance Code grants the LDI the authority to also regulate other entities not specifically mentioned that bear insurance-related risks."[20] Thus, the Diocese argues that Catholic Mutual is an insurer within the meaning of Louisiana's Insurance Code and it therefore regulated by the Code.

With all due respect, this Court disagrees with the Commissioner of Insurance's analysis of the subject Certificate. Likewise, the Court also disagrees with Catholic Mutual. Catholic Mutual relies on the decision in *Doucet v. Dental Health plans Mgmt. Corp.*, 412 So.2d 1383, 1385 (La. 1982), which involved a contract between a dentist who was not the insured and Dental Health Plans Management Corporation. It was not a contract of insurance, but a service agreement. Attached to the service agreement was an insurance agreement. The Court expressly held that the "provision for this insurance agreement and its attachment to the contract sued upon does not transform that contract into one of insurance." *Id.* p. 1385.

Here, the purpose of the Certificate is to indemnify the Diocese and provide coverage for specific losses. The terms and conditions in the Certificate look like, smell like, and act like a traditional insurance policy. Catholic Mutual has provided no

---

[20] Plaintiff's exhibit A.

jurisprudence or authority to persuade this Court otherwise. As such, the Court finds that the Certificate is a policy of insurance and is regulated by the Insurance Code or more specifically, Insurance Department Approval.

Louisiana law prohibits arbitration agreements in certain insurance policies covering property within the state. La. Rev. Stat. § 22:868(A)(2). Under the McCarran-Ferguson Act, state laws regulating insurance are shielded from the preemptive effect of federal law. 15 U.S.C. §§ 1011, 1012. Accordingly, McCarran-Ferguson allows state laws like Louisiana Revised Statute § 22:868(A)(2) to "reverse-preempt" the Federal Arbitration Act's provisions on the enforceability of insurance agreements. *See, e.g.*, *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490 (5th Cir. 2006).

Finding that the Certificate is a policy of insurance, Louisiana Revised Statute § 22:868(A) applies and therefore the arbitration provision is unenforceable.

Catholic Mutual argues that because it participated in the Court-ordered mediation, and asserted its arbitration demand in its answer, it did not waive its right to arbitrate. The Court disagrees. There is no language in the Case Management Order that would prohibit a party from demanding arbitration (notwithstanding that this Court finds that the arbitration provision is unenforceable). Catholic Mutual could have demanded arbitration at any time, prior to filing the lawsuit or during the Streamlined Settlement Process. Catholic Mutual only demanded arbitration after the Diocese filed a Motion to Enforce Settlement Agreement.

"Like any other contract term, the appraisal provision may be waived by conduct inconsistent with invocation of the provision." *Dwyer v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 565 F.3d 284, 287 (5th Cir. 2009). The appropriate waiver inquiry generally focuses on whether appraisal was timely invoked. *Id*. at 288. Even if this Court were to conclude that the arbitration provision is enforceable, the Court further finds that Catholic Mutual waived its right to compel arbitration. The Hurricanes that precipitated the parties dispute occurred over three (3) years ago.  This case was filed over two (2) years ago (October 1, 2021).

The Court finds that Catholic Mutual's conduct in failing to invoke the appraisal provision, but instead in proceeding through the Case Management Order and the Streamlined Settlement Process which resulted in two mediation conferences, is a clear waiver of any right it might have to invoke appraisal.

## CONCLUSION

For the reasons explained herein,

**IT IS ORDERED** that Catholic Mutual's Motion to Compel Arbitration (Doc. 27) is **DENIED.**

**THUS DONE AND SIGNED** in Chambers on this 18th day of December, 2023.

_____
JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**