UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **SOCIETY OF THE ROMAN CATHOLIC CHURCH OF THE DI ET AL** | **CASE NO.  2:21-CV-03480** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **CATHOLIC MUTUAL RELIEF SOCIETY OF AMERICA ET AL** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court is a "Motion to Enforce Settlement Agreement" (Doc. 30) filed by Plaintiff, the Society of the Roman Catholic Church of the Diocese of Lake Charles, the Corporation of St. Margaret's Roman Catholic Church, the Congregation of St. Theodore Roman Catholic Church, and the Congregation of St. Joseph Roman Catholic Church of Vinton (collectively referred to as "Plaintiffs" or the "Diocese").[1]

## INTRODUCTION

On August 27, 2020, Hurricane Laura made landfall near Lake Charles, Louisiana allegedly damaging numerous properties belonging to the Plaintiffs, the Society of the Roman Catholic Church of the Diocese of Lake Charles, the Corporation of St. Margaret's Roman Catholic Church, the Congregation of St. Theodore Roman Catholic Church, and the Congregation of St. Joseph Roman Catholic Church of Vinton (collectively referred to as "Plaintiffs" or the "Diocese").[2]

---

[1] Complaint, Doc. 1.
[2] Complaint, Doc. 1.

During the relevant time period, Catholic Mutual issued a Certificate of Coverage (the "Certificate") to the Diocese. The properties which were covered under the Certificate included numerous churches, schools, administrative buildings, and associated structures and facilities located in Allen, Beauregard, Calcasieu, Cameron, and Jefferson Davis Parishes (referred to as the "insured properties").[3]

The Diocese filed the instant lawsuit against Catholic Mutual and Texas Claremont Property Company, Inc. ("Claremont"). The Diocese alleged in its Complaint that the Certificate covered its insured properties, personal property/contents, and business interruption and extra expenses, caused by the hurricanes, wind, and hail.[4]

The Diocese asserts that it reported the loss to Catholic Mutual, after which, Catholic Mutual inspected the insured properties, but failed to timely and adequately adjust its claims which delayed the Diocese from making meaningful repairs. The Diocese asserts bad faith damages pursuant to Louisiana Revised Statute 22:1892 and 22:1973.

The Diocese also complains that Catholic Mutual unilaterally and without consultation with the Diocese, contracted with Claremont, a mitigation company, to conduct storm-damage mitigation work.[5] The Diocese alleges that Claremont performed the mitigation work under the direction, control, and supervision of Catholic Mutual, however, Catholic Mutual provided grossly inadequate oversight of the contractor.[6]

---

[3] *Id.* ¶ 5.
[4] *Id.*
[5] *Id.* ¶¶ 22 and 23.
[6] *Id.* ¶. 24.

The Diocese alleges that Claremont created more destruction of its insured properties than what had been caused by Hurricane Laura.[7] The Diocese alleges that Claremont workers were improperly trained and/or qualified, stole computers and equipment, removed and destroyed items not damaged, and did not complete work, leaving certain buildings exposed creating more water intrusion.[8]

The Diocese asserts that it is entitled to both compensatory damage for the property damage created by Claremont and additional payments under its Certificate commensurate with the amount Catholic Mutual chose to pay for the negligent work its unilaterally chosen mitigation contractor performed.[9]

Additionally, the Diocese asserts that the premiums Catholic Mutual charged the Diocese were unreasonably and unlawfully in excess of the coverage provided. Thus, because of the excess premiums, the Diocese requests that the applicable policy limits under the policy be judicially increased.[10]

## LAW AND ANALYSIS

The Diocese moves to have the Court enforce a settlement agreement allegedly confected by the parties. Catholic Mutual opposes the motion and maintains that the parties did not reach an enforceable settlement agreement. Catholic Mutual argues that the Certificate has a provision that requires the parties to arbitrate this dispute and also the Court lacks jurisdiction to enforce the alleged settlement agreement.

---

[7] *Id.* ¶ 25.
[8] *Id.* ¶¶ 25-32.
[9] *Id.* ¶ 33.
[10] *Id.* ¶¶ 53-54.

As noted by the parties and reflected by the record, this case has been governed by the Hurricanes Laura and Delta settlement protocols.[11] After participating in two in-person settlement conferences the following emails were exchanged:

- 06/02/2023 at 10:26 a.m. the mediator, Cade Cole, wrote to counsel for the Diocese and Catholic Mutual:[12]

    The parties have agreed to a final settlement of the above stated cause of action for the payment by Catholic Mutual ("CM") to the Diocese of $_____ in new money.

    This payment is conditioned on an executed release of CM, its officers, directors, Board, attorneys, etc. and the following:

    1. Draft Release documents to be provided by CM within 10 business days of today; Payment from CM within <u>the later of</u> 60 calendar days of today or the first business day after the 30th calendar day from receipt of all executed Release documents;
    2. Separately executed Release documents from every parish, school or other protected party with property;
    3. Release documents to cover all known and unknown claims against CM;
    4. Confidentiality provision that allows Catholic Mutual to share the settlement and its terms with it strategic business partners like, among others, its: (1) members; (2) regulators; (3) auditors; (4) accountants; (5) actuaries; (6) rating agencies; (7) attorneys; and (8) insurers/reinsurers; and that allows the Diocese to share with its professional advisors subject [sic] to any NDA requested by CM and government authorities only if necessary to reconcile FEMA claims;
    5. Mediator's fees to be split in accordance with the United States District Court's Case Management Order (75% by CM and 25% by the Diocese); and
    6. CM will execute a side letter agreement confirming that it will provide reasonable cooperation to address any enquiries of it from government authorities related to the Diocese's FEMA claim, such as: participating in any requested conference call to answer any questions related to the claim activity; providing any needed records not already provided that are later discovered by it to be in its possession, or

---

[11] See Doc. 2.
[12] Due to the confidential nature of the communications concerning the settlement negotiations, the Court will omit certain portions of these communications.

> facilitating communication with the Diocese's vendors to the extent it had predominant contact with the vendors and any additional records or information is needed from the vendor.

Please reply to this email to confirm your client's agreement.[13]

***

- 06/09/2021 – Catholic Mutual files a Petition for Declaratory Order requesting that the Insurance Commissioner declare that it is not subject to provisions of Title 22 of the Louisiana Insurance Code.[14]

- 06/15/2023 – the Louisiana Department of Insurance received Catholic Mutual's Petition for Declaratory Order.[15]

- 06/27/2023 at 5:00 p.m. counsel for the Diocese writes:

  Cade and Everett: Please allow this email to confirm the Diocese's agreement to settle the above-referenced case pursuant to the terms set forth in Cade's email copied directly below. [the email referred to is from Cade Cole dated June 2, 2023, hereinabove].

  Everett: Please let me know if you are planning to circulate the initial drafts of the proposed release and side letter agreement.

  Also, pursuant to my recent conversations with Cade Cole over the past few weeks, the Diocese's FEMA consultants have reviewed the additional documents recently produced by Catholic Mutual and compiled a list of the vendors that the Diocese is needing Catholic Mutual to contact directly to request certain additional information and/or documentation needed in order to verify the scope of work/materials for certain invoices paid by Catholic Mutual.

  We will be sending Everett a separate email either later today or tomorrow forwarding the list of vendors and related information so we Catholic Mutual can begin reaching out to those vendors.

  Best Regards,

---

[13] Plaintiff's exhibit A, attached to the Declaration of Matthew M. Mize.
[14] Plaintiff's exhibit A.
[15] Plaintiff's exhibit B.

Matthew M. Mize[16]

- 06/29/2023 at 1:50 p.m., Catholic Mutual, through counsel, responds:

   Cade and Matt:

   Thank you for the email. We will start preparing the settlement agreement and side letter in the hopes that we can reach a definitive resolution of this matter.

   As to the issue raised in Matt's email regarding the Diocese's FEMA consultant's review of the claims files, we consider that to be a counteroffer.

   I have discussed the Diocese's counteroffer with the executive team at Catholic Mutual. Contacting the Diocese's vendors to verify scope of work for a FEMA claim falls squarely within the scope of a FEMA consultant. While Catholic Mutual has always been willing to provide the Diocese with documents relating to this claim, Catholic Mutual is not a FEMA consultant and cannot, for a variety of reasons, agree to step into that role of FEMA consultant in this case. Accordingly, Catholic Mutual cannot agree to assist in the contacting of vendors in support of the Diocese's FEMA claim.

   We trust you can appreciate Catholic Mutual's reasons behind this decision. Catholic Mutual values its relationship with the Diocese of Lake Charles as it does with all its members. Catholic Mutual is hopeful that we can put this matter to rest.

   Best regards,

   Everett[17]

- 07/11/2023 at 9:47 a.m., Counsel for Catholic Mutual writes:

   Dear counsel:
       Attached is our draft of the settlement agreement and side letter for your review. We are preparing Exhibit B, the form of stipulation to dismiss the claims against Catholic Mutual.

---

[16] Plaintiff's exhibit B.
[17] Plaintiff's exhibit C, attached to the Declaration of Matthew M. Mize.

We believe that the Diocese is in the best position to prepare Exhibit A, the loss of Diocesan Associated Entities as of August 2020 (or their successors that currently exist). This list includes, but is broader than the Diocese's co-plaintiffs in the Action. Each of the Diocesan Associated Entities need to sign its own signature page of the settlement agreement with due corporate authorization. To that end, I have attached a list of **current insureds** that I received from Catholic Mutual. This list may be helpful in double checking the Diocesan Associated Entities as of August 2020.

In other diocesan settlements, this process of signing up parishes, schools and other Catholic organizations moved most quickly when:

***

This process seems to have worked satisfactorily; however, if you have another approach (e.g. DocuSign), we are flexible.

Regards,

Everett[18]

07/18/2023 - The Insurance Commissioner issues his Declaratory Order declaring that the Certificate issued by Catholic Mutual is not an insurance contract and thus not regulated by the Louisiana Insurance Code.

07/19/2023 at 10:15 a.m. – Catholic Mutual sends the Diocese and the mediator the following email:

Gentlemen:

Please be advised that Catholic Mutual hereby withdraws its settlement offer in all respects. Catholic Mutual's offer is null and void.

Regards,

Everett[19]

---

[18] Plaintiff's exhibit D attached to the Declaration of Matthew M. Mize.
[19] Plaintiff's exhibit F.

First, Catholic Mutual argues that this Court cannot enforce the alleged settlement agreement citing *Bonds v. Jones*, 2022 WL 18107270 (W.D. La. Dec. 22, 2022), *report and recommendation adopted* (W.D. La. Jan. 3, 2023). Catholic Mutual's understanding of *Bonds* is incorrect. As noted by the Diocese, *Bonds* did not have before it a motion to enforce settlement. Rather, the parties had reached a settlement and had actually tendered the settlement funds via a wire transfer to plaintiff who was incarcerated in a prison. However, plaintiff's email was hacked and incorrect wiring instructions were issued causing plaintiff to never receive the settlement funds. The case had nothing to do with enforcing a settlement agreement. The plaintiff had moved to enforce the settlement agreement and the court denied that motion. Plaintiff then moved the court for specific performance. The court concluded that "the parties' most jurisdictionally prudent course of action was to litigate liability for the lost settlement funds in state or city court." *Bonds*, 2022 WL 18107270, at *4.

This Court finds that the *Bonds'* case is not applicable. As noted by the Diocese, this Court has not been divested of its jurisdiction. "A District Court has the power to enforce summarily a settlement agreement reached in a case pending before it." *Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984); see also *Solvet Servs., LLC v. HD Ventures, LLC*, 2022 WL 13839575, at *5 (W.D. Sept. 23, 2022), report and recommendation adopted, 2022 WL 13981040 (W.D. La. Oct. 21, 2022) ("It is well-settled that a district court has the power to enforce summarily a settlement agreement reached in a case pending before it.")

Catholic Mutual argues that this Court cannot rule upon the instant Motion to Enforce Settlement because it has demanded that the dispute, including the dispute as to whether there is a binding settlement, proceed through arbitration. The Court, in another ruling issued in this case has concluded that the arbitration provisions in the Certificate is not enforceable.[20]

Catholic Mutual argues that it revoked its offer to settle before it was accepted. Catholic Mutual cites Louisiana Civil Code article 1930 which provides that "[a]n offer not irrevocable under Civil Code Article 1928 may be revoked before it is accepted." Based on the timeline presented above, Catholic Mutual posits that it revoked its offer of settlement before the Diocese accepted the offer.

The Diocese relies on Louisiana Civil Code article 1937, which states "[a] revocation of a revocable offer is effective when received by the offeree prior to acceptance." The Diocese argues that Catholic Mutual's revocation was not received until after the parties reached a binding agreement to settle. In other words, there was an offer and acceptance before the purported revocation.

There are two essential elements of a compromise: (1) mutual intention of preventing or putting an end to the litigation, and (2) reciprocal concessions of the parties to adjust their differences. *Trahan v. Coca Cola Bottling Co.*, 894 So.2d 1096 (La. 3/2/05). The requirement that the agreement be in writing does not necessarily mean that the agreement must be contained in one document. *Felder v. Georgia Pacific Corp.*, 405 So.2d

---

[20] That Ruling is being published contemporaneously with the instant Ruling. For a complete analysis and the Court's conclusions, see the Memorandum Ruling that addresses Catholic Mutual's Motion to Compel Arbitration (Doc. 27) in the record.

521 (1981). Where two instruments, read together, outline the obligations each party has to the other and evidence each party's acquiescence in the agreement, a written compromise agreement has been perfected. *Id.*; *Townsend v. Square*, 643 So.2d 787 (La.App. 4 Cir. 9/29/94).

Compromises are favored in the law, and the burden of providing the invalidity of such an agreement lies with the party attacking it. *Rivett v. State Farm*, 508 So.2d 1356 (La. 1987); *Klebanoff v. Haberle*, 978 So.2d 598, 602 (La.App. 2 Cir. 3/19/08). "Settlement agreements are highly favored in the law and will be upheld whenever possible." *Mass. Cas. Ins. Co. v. Forman*, 469 F.2d 259, 261 (5th Cir. 19972) (quoting *D.H. Overmyer Co. v. Loflin*, 440 F.2d 1213, 1215 (5th Cir. 1971)).

Under Louisiana law, a "contract is formed by the consent of the parties established through offer and acceptance. Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent." Louisiana Civil Code Article 1927. Where a writing and/or a signature is required to form a contract, an email will satisfy such requirement. Louisiana Revised Statute § 9:2607 recognizes the enforceability of electronic signature and reads as follows:

A. A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.

B. A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation.

C. If a law requires a record to be in writing, an electronic record satisfies the law.

D.  If a law requires a signature, an electronic signature satisfies the law.

In *Kelbanoff, supra* the Court reasoned that there were two essential elements of a compromise: (1) mutual intention of preventing or putting an end to the litigation, and (2) reciprocal concessions of the parties to adjust their difference, citing *Trahan, supra.* The *Kelbanoff* court also held that emails were sufficient to establish the parties' intent to compromise their dispute, even though issues of which party would draft the assignment and indemnification of defendant were not resolved in writing. The parties had agreed that plaintiffs would pay defendant approximately $56,000 for the assignment and the emails showed that plaintiffs agreed to sign the indemnification. The court determined that drafting of the assignment was merely a collateral matter.

Here, the Court must determine if the above stated email exchanges made after two settlement conferences are sufficient to establish the parties' intent to compromise their dispute. The emails addressed the amount of money the parties agreed upon to settle their differences. To be sure, on June 27, 2023, the Diocese writes to Catholic Mutual that it was confirming the terms of the settlement agreement that were expressly stated by the mediator on June 2, 2023.

There is no question that there was a meeting of the minds as to the "new money." However, Catholic Mutual argues that there was not a meeting of the minds as to its role to contact certain vendors to verify the scope of work for a FEMA claim.[21] Considering the magnitude of the settlement agreement, this term or condition appears to be ancillary

---

[21] See Plaintiff's exhibit C, dated June 29, 2023.

or a collateral matter. Catholic Mutual relies on one aspect of a "side letter" in the settlement agreement to suggest that the parties had not entered into a binding settlement agreement. Reference to the side letter is emphasized below:

> 1. CM will execute a side letter agreement confirming that it will provide reasonable cooperation to address any enquiries of it from government authorities related to the Diocese's FEMA claim, such as: participating in any requested conference call to answer any questions related to the claim activity; providing any needed records not already provided that are later discovered by it to be in its possession, ***or facilitating communication with the Diocese's vendors to the extent it had predominant contact with the vendors*** and any additional records or information is needed from the vendor.[22]

Specifically, Catholic Mutual responded that:

> I have discussed the Diocese's counteroffer with the executive team at Catholic Mutual. Contacting the Diocese's vendors to verify scope of work for a FEMA claim falls squarely within the scope of a FEMA consultant. While Catholic Mutual has always been willing to provide the Diocese with documents relating to this claim, Catholic Mutual is not a FEMA consultant and cannot, for a variety of reasons, agree to step into that role of FEMA consultant in this case. Accordingly, Catholic Mutual cannot agree to assist in the contacting of vendors in support of the Diocese's FEMA claim.[23]

The Court does not consider this to be a rejection of the offer of settlement, nor does it suggest that there was no meeting of the minds. This conclusion is buttressed by the next email sent by Catholic Mutual on July 11, 2023, wherein it stated that it drafted the settlement agreement and also expressly stated that it had prepared Exhibit B, the form of stipulation to dismiss the claims against Catholic Mutual. Additionally, Catholic Church's

---

[22] Plaintiff's exhibit A.
[23] Plaintiff's exhibit C.

email provides instructions for the Diocese to prepare and circulate a form resolution and electronically sign the settlement agreement.[24]

The Court finds that the email exchange between the parties clearly shows that there was a meeting of the minds as to the settlement agreement such that the parties wanted to put an end to this litigation, and the parties had made concessions to settle their differences. The Court does not find that the July 19, 2023, email from counsel for Catholic Mutual to the Diocese was a proper revocation of an offer because the previous emails clearly show that there had already been a meeting of the minds that the parties had agreed to settle their differences.

## **CONCLUSION**

For the reasons explained herein, the Court will grant the Motion to Enforce Settlement Agreement (Doc. 30) filed by Plaintiff, the Society of the Roman Catholic Church of the Diocese of Lake Charles, the Corporation of St. Margaret's Roman Catholic Church, the Congregation of St. Theodore Roman Catholic Church, and the Congregation of St. Joseph Roman Catholic Church of Vinton.

**THUS DONE AND SIGNED** in Chambers on this 18th day of December, 2023.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[24] Plaintiff's exhibit D.